IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>KATHERINE P. KEALOHA (1);<br>LOUIS M. KEALOHA (2);<br>DEREK WAYNE HAHN (3);<br>MINH-HUNG NGUYEN (4);<br>GORDON SHIRAISHI (5); and<br>DANIEL SELLERS (6),<br><br>　　　　　　Defendants. | CR. NO. 17-00582 JMS-RLP<br><br>ORDER DENYING DEFENDANT<br>GORDON SHIRAISHI'S MOTION<br>TO DISMISS THE INDICTMENT,<br>ECF NO. 335 |

## **ORDER DENYING DEFENDANT GORDON SHIRAISHI'S MOTION TO DISMISS THE INDICTMENT, ECF NO. 335**

### **I. INTRODUCTION**

Defendant Gordon Shiraishi ("Shiraishi") filed a Motion to Dismiss the Indictment[1] on January 24, 2019, based on allegations of prosecutorial misconduct in the grand jury proceedings. ECF No. 335. The government filed its Response in Opposition to the Motion to Dismiss the Indictment on January 25,

---

[1] In fact, the operative Indictment is a First Superseding Indictment, returned by the grand jury on March 22, 2018. ECF No. 164. For ease of reference, the court will refer to the First Superseding Indictment as "the Indictment."

2019, ECF No. 345, and Shiraishi filed his Reply on February 4, 2019, ECF No. 371. A hearing was held on February 11, 2019.

Because the court finds no prosecutorial misconduct that would warrant dismissal of the Indictment, the Motion to Dismiss the Indictment is DENIED.

## II. **DISCUSSION**

**A.** **Legal Framework**

A federal court may dismiss an indictment for either: (1) constitutional error; or (2) under the exercise of its inherent supervisory authority, based on (with some limitations) its own "procedural rules not specifically required by the Constitution or the Congress." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (internal citation and quotation marks omitted); *see also United States v. Caruto*, 663 F.3d 394, 397 (9th Cir. 2011). Generally, however, an indictment valid on its face cannot be challenged on the ground that the grand jury acted on inadequate or incompetent evidence.[2] *United States v. Calandra*, 414 U.S. 338, 343-45 (1974); *United States v. Renzi*, 651 F.3d 1012, 1027 (9th Cir. 2011).

---

[2] Shiraishi does not claim that the Indictment is invalid on its face.

One ground for dismissal of an indictment for constitutional error is a due process violation based on outrageous government conduct, which requires that "defendants . . . show conduct that violates due process in such a way that it is so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011) (internal citation and quotation marks omitted). "The defense is therefore limited to extreme cases in which the government's conduct violates fundamental fairness." *Id.* (internal citation and quotation marks omitted).

Dismissal of an indictment under the court's inherent supervisory authority "is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (citation and internal editorial marks omitted); *see also United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010). This standard requires a harmless-error inquiry unless "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257 (listing two examples of structural error: *Vasquez v. Hillery*, 474 U.S. 254 (1986), where there was racial discrimination in grand juror selection; and *Ballard v.*

*United States*, 329 U.S. 187 (1946), where women were excluded from the grand jury).

**B.    Application**

Shiraishi argues that the prosecutors engaged in misconduct when they impermissibly: (1) failed to inform him of his target status; (2) failed to advise him prior to his testifying before the grand jury of his Fifth Amendment privilege against self-incrimination; and (3) created a "perjury trap."  ECF No. 335-1 at 14, 19; ECF No. 371 at 5.

*1.    Failure to Notify of Target Status or Provide Warnings*

*a.    Dismissal for constitutional error*

Although the Fifth Amendment privilege against self-incrimination applies to grand jury witnesses, *United States v. Washington*, 431 U.S. 181, 186 (1977) (citing *Counselman v. Hitchcock*, 142 U.S. 547 (1892)), the Court has left open the question of "whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses." *Id*.

What the Supreme Court has made clear, however, is that the Fifth Amendment privilege has no bearing on either an individual's target status or if an individual provides perjured testimony.  First, the failure to provide warnings to a witness of his or her target status has no bearing on the Fifth Amendment privilege

4

against self-incrimination. *Id.* at 189 ("Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights."); *see also United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995). Accordingly, even if Shiraishi was a target at the time of his grand jury appearance (and, to be clear, the court is not making such a finding), the failure of the government to warn him of that status does not violate the Fifth Amendment privilege.

Second, "[t]he Fifth Amendment privilege does not condone perjury." *United States v. Wong*, 431 U.S. 174, 178 (1977). In *Wong*, the Court addressed "whether a witness who, while under investigation for possible criminal activity, is called to testify before a grand jury and who is later indicted for perjury committed before the grand jury, is entitled to have the false testimony suppressed on the ground that no effective warning of the Fifth Amendment privilege to remain silent was given." *Id.* at 174-75. *Wong* held that the witness was not entitled to have her testimony suppressed because the Fifth Amendment "grants a privilege to remain silent without risking contempt, but it does not endow the person who testifies with a license to commit perjury." *Id.* at 177-78 (citation and quotation marks omitted). And, "[t]he failure to provide a warning of the privilege, in addition to the oath to

5

tell the truth, does not call for a different result." *Id.* at 178; *see also United States v. Knox*, 396 U.S. 77, 80 (1969); *United States v. Mandujano*, 425 U.S. 564, 576 (1976); *Washington*, 431 U.S. at 182 n.1 ("[W]e have settled that grand jury witnesses, including those already targeted for indictment, may be convicted of perjury on the basis of their false grand jury testimony even though they were not first advised of their Fifth Amendment privilege against compelled self-incrimination."). "The Supreme Court has in a variety of contexts upheld this principle, applied in *Mandujano* and *Wong*, that a defendant may not have his act of perjury excused, through suppression of evidence, because of constitutional violations." *United States v. Kennedy*, 372 F.3d 686, 694 (4th Cir. 2004). This principle also extends to violations of the Sixth Amendment right to counsel. *Id.* at 694-95 (collecting cases).

This law is fatal to Shiraishi's arguments.[3] In relation to his grand jury appearance, Shiraishi is indicted in part with Obstruction of Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), for testifying falsely before the

---

[3] Shiraishi also argues, largely by reference to various cell phone records possessed by the prosecution before the date of his grand jury testimony, that the prosecution must have known that he was a target at the time of his testimony. ECF No. 335-1 at 8-11. The United States responds that in fact Shiraishi did not reach target status until well after his grand jury appearance. ECF No. 356 at 13-14. At best, Shiraishi has shown that the prosecution team *might* have been able to determine, based on certain records, that Shiraishi's prior statements to the FBI were false, but he has not shown that in fact he was a target by the date of his testimony before the grand jury.

grand jury. First Superseding Indictment, ECF No. 164 at 29-30. Accordingly, the Fifth Amendment privilege does not protect Shiraishi when he allegedly gave perjured testimony before the grand jury.[4]

Further, the alleged Fifth Amendment due process violation is not so "grossly shocking and so outrageous as to violate the universal sense of justice." *Stinson*, 647 F.3d at 1209. The law is unsettled as to whether "any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses." *Washington*, 431 U.S. at 186. And as should be obvious, prosecutorial misconduct simply can't be based on such uncertain and unsettled law.

---

[4] At the hearing, Shiraishi attempted to distinguish his case from *Wong* and other related cases by arguing that the grand jury was never made aware that his allegedly perjured testimony was given after refreshing his recollection with a false document prepared by another person. That document was an HPD Follow Up Report written by HPD officer Niall Silva ("Silva"), which provided that Silva recovered video footage from Katherine and Louis Kealoha's house at 8:59 a.m. on June 22, 2013. Ex. E, ECF No. 335-7. Silva later pled guilty to an Information, admitting that he created false and misleading HPD reports about the circumstances of the seizure of the hard drive that contained the video footage. *See* Cr. No. 16-00787 SOM, ECF Nos. 1, 19. Regardless, Shiraishi's claim is simply wrong — the grand jury was informed, in clear terms, that Silva had lied to the grand jury. *See* Ex. L, ECF No. 378-2.

This argument also fails for several other reasons. First, based on *Wong* and related cases, it seems obvious that the court should not reach the merits of the perjury claim prior to finding that the Fifth Amendment privilege against self-incrimination does not apply. Otherwise, the court would essentially be trying the perjury charge every time a Fifth Amendment privilege issue was raised. Second, Shiraishi has not provided the court with evidence, one way or the other, as to whether the grand jury returning the operative Indictment was eventually presented with evidence that Shiraishi refreshed his recollection with a false document. Shiraishi only cites to the grand jury proceedings before Grand Jury 15-1. *See, e.g.*, Ex. F at 20:5-21:18, ECF No. 335-8; *see generally* Ex. 1, ECF No. 356-1. Grand jury records filed with the clerk and available to the public show that the initial Indictment was returned by Grand Jury 15-1 on October 19, 2017. But the operative Indictment, the First Superseding Indictment, was returned by a different grand jury, Grand Jury 17-1 on March 22, 2018.

### b. *Dismissal under the court's inherent supervisory authority*

Shiraishi also argues that the court should exercise its inherent supervisory powers to dismiss the Indictment.[5] And although the court agrees that the better practice — the much better one — would have been to provide Shiraishi with his Fifth Amendment rights in the grand jury, *see* Justice Manual 9-11.151, the government acknowledges that it is their general practice to advise grand jury witnesses of their rights and the failure to do so with Shiraishi was an oversight. *See* ECF No. 356 at 6 n.3.

Regardless, the failure to give Shiraishi his Fifth Amendment rights, given the lack of law requiring such warnings, is not "so grossly shocking and so outrageous as to violate the universal sense of justice" or an "extreme case[] in which the government's conduct violates fundamental fairness." *Stinson*, 647 F.3d at 1209 (internal citation and quotation marks omitted).

---

[5] Shiraishi cites one case — *United States v. Jacobs*, 547 F.2d 772, 778 (2d Cir. 1976) — where a court used its inherent supervisory powers to suppress grand jury testimony and dismiss a perjury count of the indictment because the prosecutors failed to give Fifth Amendment privilege warnings. But that holding was made on narrow grounds, which are not at issue here. *See id.* ("For the reasons previously stated, our opinion was based only on our supervisory power, exercised in a circumscribed manner involving the Strike Force, and in circumstances where under the sanction imposed, a guilty person, in any event, would not be likely to escape conviction because of our ruling. . . . Our only purpose was to make the practice of the Task Force conform to that of the United States Attorney in the same district, and we think that the sanction of suppression is salutary in the circumstances." (emphasis omitted)).

### 2. *Perjury Trap*

As a final matter, the court rejects Shiraishi's "perjury trap" defense. "A perjury trap is created when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury." *United States v. Chen*, 933 F.2d 793, 796 (9th Cir. 1991) (citing *United States v. Simone*, 627 F. Supp. 1264, 1268 (D.N.J. 1986)). The Ninth Circuit has not recognized the "perjury trap" doctrine other than to recognize that the doctrine is inapplicable "[w]hen testimony is elicited before a grand jury that is attempting to obtain useful information in furtherance of its investigation, or conducting a legitimate investigation into crimes which had in fact taken place within its jurisdiction . . . ." *Id.* at 797 (citations and internal editorial marks omitted). Shiraishi's testimony was given during the investigation of the actions of the Honolulu Police Department's ("HPD") Criminal Intelligence Unit related to a missing mailbox that Louis Kealoha claimed was taken from his and Katherine Kealoha's property. Thus, this testimony was material to a legitimate investigation into crimes which took place in the grand jury's jurisdiction, and the "perjury trap" defense is inapplicable.

Accordingly, the court finds no prosecutorial misconduct warranting dismissal of the Indictment.[6]

## III. CONCLUSION

For the foregoing reasons, Shiraishi's Motion to Dismiss the Indictment is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 21, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kealoha, et al.*, Cr. No. 17-00582 JMS-RLP, Order Denying Defendant Gordon Shiraishi's Motion to Dismiss the Indictment, ECF No. 335

---

[6] Shiraishi also argues that "[o]ther problems exist within this case that add weight to whether sanctions are justified in this case." ECF No. 335-1 at 19. Shiraishi presents these additional "problems" with little or no argument, *see* ECF No. 335-1 at 19-22. None of these "problems" rises to the level of prosecutorial misconduct requiring dismissal of the Indictment. Further, the court will not dismiss the Indictment because a prosecutor mentioned Gerard Puana's polygraph examination to the grand jury for the same reasons given in the Order Denying Katherine and Louis Kealoha's Motion to Dismiss the Indictment, ECF No. 312, and Denying Related Joinders, ECF Nos. 364, 365. ECF No. 423.