IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     vs.<br><br>GORDON SHIRAISHI (5),<br><br>            Defendant. | CR. NO. 17-00582 JMS-RLP<br><br>ORDER AFFIRMING MAGISTRATE JUDGE ORDER DENYING DEFENDANT GORDON SHIRAISHI'S REQUEST FOR GRAND JURY TRANSCRIPT |

**ORDER AFFIRMING MAGISTRATE JUDGE ORDER DENYING DEFENDANT GORDON SHIRAISHI'S REQUEST FOR GRAND JURY TRANSCRIPT**

Defendant Gordon Shiraishi ("Shiraishi") appeals an order of Magistrate Judge Richard L. Puglisi denying his motion to unseal the grand jury transcript of FBI Special Agent Nicole Vallieres ("Vallieres") before Grand Jury 17-1. Shiraishi claims that disclosure of the transcript may show that the grand jury was never informed that a document shown to him before a prior grand jury was later determined to be false. And, if so, presumably Shiraishi would file a motion based on allegations of prosecutorial misconduct that may be grounds to dismiss the First Superseding Indictment ("FSI"). Because Shiraishi cannot demonstrate the particularized need required to overcome the presumption of secrecy that attaches to grand jury proceedings, the Magistrate Judge's order

denying Shiraishi's motion to compel disclosure of Vallieres' testimony before Grand Jury 17-1 is AFFIRMED.

## I. BACKGROUND

### A. Procedural Background

On January 24, 2019, Shiraishi filed a Second Motion to Compel ("Motion"). ECF No. 336 (sealed version); ECF No. 350 (redacted version). The government filed a Response on January 25, 2019. ECF No. 346. Shiraishi filed a Reply on February 13, 2019. ECF No. 404. The government filed a Supplemental Response on February 15, 2019, to which Shiraishi filed a Sur-Reply on February 19, 2019, ECF Nos. 415, 417. On February 22, 2019, Magistrate Judge Richard L. Puglisi held a hearing and, upon the conclusion of that hearing, denied the Motion. ECF No. 427. Shiraishi filed this Appeal on March 8, 2019, ECF No. 491, and the government filed a Response on March 18, 2019. ECF No. 509. A hearing on the Appeal was held on March 25, 2019.

### B. Factual Background

Grand jury records filed with the clerk of court and available to the public show that the initial Indictment against Shiraishi and others was returned by Grand Jury 15-1 on October 19, 2017. But the operative Indictment, the FSI, was returned on March 22, 2018 by a different grand jury, Grand Jury 17-1.

The FSI charges Shiraishi with several offenses alleging that he provided material false statements concerning the time of day on June 22, 2013 that former Honolulu Police Department ("HPD") Chief Louis Kealoha ("Kealoha") telephoned Shiraishi and reported that Kealoha's home mailbox had been stolen. In particular, Shiraishi is alleged to have repeated the same general false statement — that he received a phone call from Kealoha around 9 a.m. on June 22, 2013, and then called HPD Lieutenant Derek Hahn and directed Hahn to send a technician to the Kealoha residence — on four separate occasions: 1) on April 30, 2015 before the Honolulu Ethics Commission ("Ethics Commission"), FSI at ¶ 37uu, ECF No. 164;[1] 2) on November 16, 2015 to the FBI, FSI at ¶ 37vv & count 10; 3) on January 6, 2016 to the FBI, FSI at ¶ 37yy; and 4) on January 7, 2016 to a federal grand jury, FSI ¶ 37zz & count 3.

During the April 30, 2015 Ethics Commission interview, Shiraishi stated that his phone call with Kealoha "was in the morning time, I think, about around 9 or after; 9 a.m[.], sorry." ECF No. 445-2 at Page ID # 3827 (79:22-23). When subsequently asked, "[t]he Chief called you about 9 a.m.?" Shiraishi

---

[1] Although the FSI is silent as to whom Shiraishi's April 30, 2015 statement was made, the parties agree that this statement was made during an interview with the Ethics Commission. *See* ECF No. 445-2 (partial transcript of the recorded Ethics Commission interview).

responded, "[a]round there or maybe after. Wasn't like early in the morning." *Id.* at Page ID # 3828 (80:1-2).

The November 16, 2015 FBI interview is memorialized in an FBI 302, which states in part that "[o]n June 22, 2013, SHIRAISHI learned the mailbox was stolen. SHIRAISHI was at home, as it was a Saturday. [Kealoha] called SHIRAISHI about 9:00AM to inform him about the mailbox . . . ." ECF No. 445-3 at PageID # 3832.

On January 6, 2016, the day prior to his scheduled grand jury appearance, Vallieres interviewed Shiraishi. Although no FBI 302 appears to have been generated, the government submitted Vallieres' handwritten notes from that interview. ECF No. 477-1. At the very beginning of the notes (that is, on the top of the first page), Vallieres wrote:

> First aware of alleged mbx theft
> – Sat morning – contacted by Chief thru cell [phone number redacted]
> @ home watering lawn – @ 9:00 ish

*Id.* at PageID # 4162. On the third page of her notes (that is, later during the interview), she wrote:

> [form shown (Niall Silva)]
> – recovered footage on 6/22/13 at 0859 hrs at Chief's house
> – understands he must have been made aware of stolen mbx before that

4

*Id.* at PageID # 4164. The parties agree that the Niall Silva "form" shown to Shiraishi on January 6, 2016 refers to a July 1, 2013 "Honolulu Police Department Follow Up Report" completed by former HPD Corporal Niall Silva ("Silva follow-up report"). In that report, Silva states he recovered video footage from the Kealoha residence "on 06/22/13 at about 0859 hours." ECF No. 445-4. The parties also agree that the Silva follow-up report is false. Specifically, the parties agree that Silva lied on this report, and in fact he did not recover video footage from the Kealoha residence "at about 0859 hours" on June 22, 2013.

On January 7, 2016, Shiraishi testified before Grand Jury 15-1, and was again shown Silva's follow-up report. ECF No. 445-10. But before being shown the Silva follow-up report, Shiraishi testified as follows:

> Q   Did there come a time on or about the 22nd day of June, 2013, a Saturday, when you became aware of an incident that occurred at Chief Kealoha's house?
>
> A   Yes.
>
> Q   Tell us about that.
>
> A   I was — it was a Saturday, so I was off duty. And this was in the morning time, 9:00 — after 9:00 or before 9:00 I can't tell you the exact time. But it was in the morning, and I was watering my yard. I remember that, and I received a phone call from the Chief.

*Id.* at PageID # 4052 (11:13-22).

Later, after Shiraishi was shown the Silva follow-up report, Shiraishi testified before the grand jury as follows:

> Q   I'm now showing you what's been previously marked as a Grand Jury Exhibit as NS-2.[2] Would you take a look at that, sir.
>
> A   Okay.
>
> Q   Do you recognize that official, Honolulu Police Department Follow-up Report?
>
> A   Yes.
>
> . . . .
>
> Q   And do you recognize the signature at the bottom of the report?
>
> A   It appears that I — to be that of Niall Silva.
>
> . . . .
>
> Q   And does that report purport to document the retrieval of the video footage at Chief Kealoha's house?
>
> A   Yes. At that time the present house.
>
> Q   At the house where the alleged mailbox [theft] occurred?
>
> A   Yes.

---

[2] Grand Jury Exhibit NS-2 is Silva's follow-up report.

> . . . .
>
> Q — okay.
> So at what time does Corporal Silva report the retrieval of the video from the house?
>
> A He has it written down as 0859 hours.
>
> . . . .
>
> Q Okay. So based upon the date on that report and the time, does that help you reflect upon the time when you might have received a call from the Chief?
>
> A Well, it might have been before 9:00 obviously because I couldn't be sure; —
>
> Q Right.
>
> A — but it was in the morning.
>
> Q Okay. So based upon that you got a call from the Chief before 9:00 o'clock because Mr. Silva would had to have been — you called Lieutenant Hahn who then called presumably Silva who then got dressed and got his car and drove to the Chief's house to get the video, right?
>
> A. Yes.

*Id.* at PageID # 4061-63 (19:2-8; 19:13-15; 19:20-24; 20:4-7; 20:15-21:2).

During the March 25, 2019 hearing, the government clarified that neither Count 3 (charging Shiraishi with obstruction of grand jury proceeding on January 7, 2016) nor overt acts 37yy and 37zz (charging overt acts in relation to

7

the January 6, 2016 FBI interview and the January 7, 2019 grand jury appearance) include allegations relating to Shiraishi's responses to questions about the Silva follow-up report.  In other words, Shiraishi's answers to questions about the Silva follow-up report — whether to the FBI and/or in front of the grand jury — are not charged in the FSI.

Shiraishi now seeks very limited information — the transcript of Vallieres' testimony, the FBI's summary witness, before Grand Jury 17-1.  He claims that during Vallieres' testimony before Grand Jury 15-1, she failed to inform the grand jury that the Silva follow-up report (which, he claims, was "used to refresh Gordon Shiraishi's memory") was false.  ECF No. 404 at PageID #3374.  Shiraishi believes it likely that Vallieres' testimony before Grand Jury 17-1 likewise failed to disclose the falsity of the Silva follow-up report, and that such a fact could give rise to a motion to dismiss the FSI for prosecutorial misconduct.[3]

---

[3] This belief is based, at least in part, on the transcript of Vallieres' testimony before the initial grand jury (Grand Jury 15-1), which transcript was disclosed to Shiraishi.  During that testimony, Vallieres did not inform the grand jury that the Silva follow-up report was false.  But regardless of whether Vallieres provided that testimony, it is obvious that Grand Jury 15-1 was in fact informed of the falsity of the report through some witness (even if not Vallieres).  Grand Jury 15-1 obviously knew and accepted the fact that the Silva follow-up report was false — an overt act of a conspiracy charge in the initial indictment states that "[o]n or about July 1, 2013, when logging the Video excerpts into HPD evidence, Silva created a *false* Follow Up Report claiming that he had collected the original Video hard drive from the KEALOHAs' then personal residence on June 22, 2013, at 8:59 a.m." ECF No. 17 at PageID # 131 (¶ 36y) (emphasis added).

## II. **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1) and Criminal Local Rule 57.3(b), a party may appeal to a district judge any pretrial nondispositive matter determined by a magistrate judge. Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge's order may be reversed by the district court only if it is "clearly erroneous or contrary to law." The threshold of the "clearly erroneous" test is high. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.").

The court "may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E). To overcome the public interest in grand jury secrecy, a defendant is required to make "a strong showing of a particularized need for grand jury materials." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966) (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 405 (1959)). The defense bears the burden of demonstrating a particularized need. *Pittsburgh Plate Glass Co.*, 360

9

U.S. at 400. Unsubstantiated or speculative assertions of impropriety are not enough to overcome the public's interest in grand jury secrecy. *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987).

### III. ANALYSIS

Shiraishi's appeal is based on two factual premises, which the court now addresses.

First, Shiraishi claims that Grand Jury 17-1 may not have been informed that the Silva follow-up report was false. But on its face, this claim is simply untrue. Some witness, whether Vallieres or another, in fact informed the grand jury that the Silva follow-up report was false. This is obvious from Count 1 of the FSI, a conspiracy charge, that alleges the following overt act in paragraph 37gg:

> On or about July 1, 2013, when logging Video excerpts into HPD evidence, Silva created a *false* Follow Up Report claiming that he had collected the original Video and hard drive from the KEALOHAs' then personal residence on June 22, 2013, at 8:59 a.m.

ECF No. 164 at PageID # 1192 (¶ 37gg) (emphasis added).[4] It is equally clear the grand jury would know that this is the *same* report that Shiraishi reviewed during

---

[4] During the hearing before Magistrate Judge Puglisi, Shiraishi's counsel insisted that although Grand Jury 15-1 had been told that Silva lied during the Puana mailbox theft case, the

(continued . . .)

his grand jury testimony.[5] When Shiraishi was shown the Silva follow-up report before the grand jury, the government made clear that it was a "Follow Up Report" created by Silva, that it reflected that Silva had retrieved the video from the Kealoha home, and that he did so at 8:59 a.m. In short, the evidence is undisputed — Grand Jury 17-1 knew that the Silva follow-up report was false.

The second premise underlying Shiraishi's appeal — that the government used the Silva follow-up report to refresh Shiraishi's memory — is likewise inaccurate. Rather, it appears that Shiraishi merely confirmed (both during the January 6, 2016 FBI interview and the January 7, 2016 grand jury appearance), *assuming* the truth of the Silva follow-up report, that he *must* have received the Kealoha telephone call prior to 8:59 a.m. on June 22, 2013. But he never adopted Silva's version of events as his own in any statement to the FBI or grand jury. For example, on January 6, 2016 after being shown the Silva follow-up report, Vallieres wrote that Shiraishi "understands he must have been made aware

---

(. . . continued)
grand jury was never told that the Silva follow-up report was false. But a simple reading of the initial Indictment proves otherwise. As stated earlier, Grand Jury 15-1's Indictment included the exact same overt act alleging that the Silva follow-up report was false. In short, both grand juries not only knew that the Silva follow-up report was false, but affirmatively included the falsity of the report as part of their allegations.

[5] During the March 25, 2019 hearing, counsel for the government made clear that Grand Jury 17-1 was provided with a transcript of Shiraishi's testimony before Grand Jury 15-1.

11

of stolen mbx before" the time (8:59 a.m.) reflected on that report. And after being shown the Silva follow-up report in the grand jury, Shiraishi testified that the Kealoha phone call "might have been before 9:00 obviously because I couldn't be sure[.]" ECF No. 445-10 at PageID # 4062 (20:18-19). The meaning of this testimony is relatively clear — assuming what Silva wrote was true, it is "obvious" that the Kealoha call would have been before 9:00 a.m. But even after reviewing the Silva follow-up report, Shiraishi "couldn't be sure" as to whether the Kealoha call was before 9:00 a.m.

Given these facts, Shiraishi modified his argument somewhat during the March 25, 2019 hearing. He now argues that even if Grand Jury 17-1 knew that the Silva follow-up report was false, it remains unclear if Grand Jury 17-1 knew that Shiraishi was shown the Silva follow-up report on January 6, 2016, the day prior to his grand jury testimony. But even if Grand Jury 17-1 did not know this fact, Shiraishi cannot show prosecutorial misconduct for several reasons. First, Shiraishi's responses to the Silva follow-up report are not charged in any count or overt act in the FSI, and there is simply no evidence before the court that his review of the Silva follow-up report had any impact on his later testimony

before the grand jury.[6]  Further, there is no evidence of perjury before the grand jury, no evidence that the grand jury's indictment was influenced in any way by the Silva follow-up report, and no showing of the sort of misconduct that could give rise to any sanction under these circumstances.  In short, the Magistrate Judge committed no error, let alone clear error.  Shiraishi has failed to make the showing of particularized need for the disclosure of grand jury material.[7]

///

///

///

///

///

///

///

///

---

[6]  As explained in the Order Granting United States' Motion in Limine to Exclude Expert Testimony, ECF No. 520, Shirasihi's testimony regarding the time of the Kealoha phone call, both before and after he was shown the Silva follow-up report, was "strikingly similar." *Id.* at PageID# 4526.  Before he saw the report, he estimated the time as "about around 9" or "at about 9:00 a.m." or "9:00 ish." *Id.*  And after being shown the Silva follow-up report, Shiraishi testified before the grand jury that the Kealoha call was 'in the morning time, 9:00 — after 9:00 or before 9:00 I can't tell you the exact time." *Id.*

[7]  For these same reasons, the court declines to review Vallieres' transcript in camera.

## IV. **CONCLUSION**

For the foregoing reasons, the Magistrate Judge Order Denying Defendant Gordon Shiraishi's Request for Grand Jury Transcript is AFFIRMED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 2, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Gordon Shiraishi* (05), Cr. No. 17-00582 JMS-RLP, Order Affirming Magistrate Judge Order Denying Defendant Gordon Shiraishi's Request for Grand Jury Transcript